IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL LOUIE,

                    Petitioner,

          vs.

SCOTT FRAUENHEIM, Warden, Pleasant
Valley State Prison,[1]

                    Respondent.

No. 2:12-cv-02678-JKS

MEMORANDUM DECISION

Michael Louie, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas

Corpus with this Court pursuant to 28 U.S.C. § 2254.  Louie is in the custody of the California

Department of Corrections and Rehabilitation and incarcerated at Pleasant Valley State Prison.

Respondent has answered, and Louie has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On July 8, 2008, Louie, along with co-defendant Soriyaa Ek, was charged with the

attempted premeditated murder of Christina McDonald (count 1); arson of an inhabited structure

or property (count 2); dissuading a witness by force or threat (count 3); and street terrorism

(count 4).  Ek was also charged with two counts of criminal threats (counts 5 and 6) and another

count of dissuading a witness by force or threat (count 7).  All counts, with the exception of

count 4, alleged that the crimes were committed for the benefit of, or at the direction of, a

criminal street gang.

---

[1]        Scott Frauenheim, Warden, Pleasant Valley State Prison, is substituted for Rick
Hill, former Warden, Folsom State Prison.  FED. R. CIV. P. 25(c).

Louie pled not guilty and denied the enhancement allegations.  On July 24, 2008, Louie

and Ek proceeded to jury trial.  On direct appeal of his conviction, the California Court of

Appeal recounted the following facts underlying the charges against Louie and the evidence

presented at trial:

> On January 6, 2007, Christina McDonald was living at 4404 Manchester Avenue, apartment number 28 in Stockton, California.  She lived with her fiancé Eric Lamarra, her infant daughter, and Eric's parents Rocky Lamarra and Rebecca Nagy.  Around 11:40 p.m. McDonald was watching television in the living room with her daughter.  Her daughter was in a crib between the couch and the window.  Eric was at another apartment, and his parents were asleep upstairs.
>
> McDonald heard voices outside the apartment.  She went to the door and opened it.  She saw two individuals.  She recognized them, but did not know their names.  She had seen them hanging around with the usual bunch of troublemakers.  One of them had "very noticeable gold teeth" and was wearing a bright orange sweatshirt.  The other one, who was thinner, was wearing a black sweatshirt.  He was later identified as Louie.  Both men glared at her.  The man in the orange sweatshirt, later identified as Ek, approached her and said, "Fuck you.  You're a cop caller.  Go inside, bitch.  You're going to get yours[.]"
>
> McDonald closed the door.  She debated whether or not to call the police, and finally decided just to sit down and forget about it.  She then heard breaking glass and saw her curtains go up in flames.  She ran to her daughter's crib and picked her daughter up, burning her hand on the metal crib because it was so hot.  She managed to wake up everyone and get them out of the apartment through the back door.  A neighbor had to cut the back fence so they could escape.
>
> Emily Un, McDonald's apartment manager, was driving toward the complex around midnight.  She saw [Louie and Ek] running out of the entrance to the complex.  She recognized them because they were always disturbing her tenants, pulling out the no trespassing signs, and writing on the walls.  Ek was wearing an orange sweatshirt, orange cap, and khaki pants.  He was carrying a yellow bucket.  Louie was wearing a black sweatshirt, black jeans, and a black hat.  As Un walked to her apartment, she saw [Louie and Ek] behind one of the vacant apartments.  She told them to get out and asked what they were doing there.
>
> Un started walking toward [Louie and Ek].  They both took off their sweatshirts, dropped them, and kept running.  Un smelled gasoline on the shirts.  [Louie and Ek] took the yellow bucket with them.  Un turned around and saw smoke coming from the apartments and heard the sirens.
>
> The discarded sweatshirts tested positive for the presence of gasoline, as did burnt debris from the apartment fire.  The sweatshirts were also tested for DNA evidence.  The orange sweatshirt contained one major and two minor DNA contributors.  The profile of the major contributor matched Ek's profile.  The black sweatshirt also contained a

mixture of DNA, but it was not possible to determine a major and minor contributor. Louie was determined to be a possible contributor to the DNA on the black sweatshirt, although statistically the match was not as strong as for Ek.

An arson investigator determined that the fire originated near the front doorway of McDonald's apartment. The fire traveled in from the outside. The fire was caused when an open flame, spark, or hot surface was used to ignite a liquid to start the fire.

McDonald testified that her neighborhood was gang infested, the predominant gang being the Tiny Raskal Gang (TRG), an Asian gang. She had seen Louie and Ek with other TRG members. She had a run-in with TRG about two months prior to the fire. She was sitting in her back yard when two gang members, who were running from the police, jumped her back fence and tried to come into the yard. She told them they were not allowed in the yard and had to leave. They got mad, and when her fiancé came out to support her, they threw a large potted plant at his head. They said they were going to get a gun and come back.

She called the police and filed a report. The individuals were Joseph Danh and Rachana Pheng. Right after that incident, someone came to their door and told them not to testify, and that things would be better for them if they did not. TRG members would often threaten them with sticks. They often had guns. They sold drugs and harassed the neighbors. They called her honky, cop caller, and dumb white bitch. McDonald said things got so bad that she and her family just stayed inside.

Just prior to the incident where [Louie and Ek] set fire to the apartment, McDonald had called the police because gang members were yelling and shooting guns. She could not relax in her own apartment because she was afraid a bullet would come through the window.

Two or three weeks after the fire, around January 15, 2007, McDonald called police to make an anonymous tip when she spotted Ek at the volleyball field. That day, Ek came to her back gate, pointed a gun at her, called her a cop calling bitch, and said she was going to get hers, just like the night of the fire.

Ek was arrested on February 14, 2007, and Louie was arrested on March 31, 2007. Louie admitted association with the TRG. Ek admitted association with MLS, the Moonlight Strangers. He had MLS tattooed on his left forearm.

Detective Richard Slater testified as an expert on Asian street gangs. Although both TRG and MLS are considered Asian street gangs, not all of their members are Asian. It is common for TRG members and MLS members to hang out together. They do crimes together and back up each other. In Stockton, both TRG and MLS are Blood gang subsets. Detective Slater opined that the arson of the apartment and subsequent threats were for the benefit of the TRG gang, specifically to punish McDonald and Eric Lamarra for calling the police on TRG gang members and to intimidate the entire neighborhood.

*People v. Louie*, 136 Cal. Rptr. 3d 646, 649-50 (Cal. App. Ct. 2012).

On September 9, 2008, the jury found Louie and Ek not guilty of count 1 but guilty of all other counts and found true all enhancements. The court denied probation and sentenced Louie

to an aggregate indeterminate prison term of 7 years to life, calculated as follows: life with a minimum of 7 years on count 3; 5 years plus a stayed term of 10 years on the gang enhancement on count 2, to be served consecutive to count 3; and a 2-year concurrent sentence on count 4.[2]

Through counsel, Louie appealed his conviction, arguing that the trial court erred in failing to charge the jury with a unanimity instruction as to count 3 (witness intimidation) and the evidence was insufficient to sustain the jury's finding that Louie aided and abetted Ek in the commission of count 3. Louie also joined in the arguments raised by Ek. The Court of Appeal modified Louie's judgment to stay the 2-year concurrent sentence for street terrorism (count 4) but affirmed the judgment in all other respects in a reasoned, partially-published opinion. *Louie*, 136 Cal. Rptr. 3d at 654. Counsel for Louie petitioned for review in the California Supreme Court, which was summarily denied on May 9, 2012.

Louie timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on October 11, 2012.

## II. GROUNDS/CLAIMS

In his *pro se* Petition, Louie raises two grounds for relief, which he raised to the state courts on direct appeal. First, he argues that the trial court committed reversible error in failing to charge the jury with a unanimity instruction as to count 3 (the witness intimidation of McDonald). He also asserts that the evidence was insufficient to sustain a finding with respect to count 3 that Louie aided and abetted Ek in the intimidation of McDonald.

---

[2]     The court also denied Ek probation and sentenced him to an aggregate imprisonment term of 14 years to life.

Louie also joins in certain claims raised by Ek on direct appeal and exhausted by Ek before the state courts. These include claims that there was insufficient evidence to support his conviction on count 3 for the additional reason that the evidence demonstrated that Louie's and Ek's actions were taken in retaliation for the victim's past reporting of their gangs' crimes rather than intimidating her from reporting any current crime; the witness intimidation instruction was faulty because it allowed them to be convicted of dissuading a witness from reporting a crime that was not the same crime the victim either witnessed or suffered; and the actions underlying his convictions for arson and witness intimidation comprised a single course of conduct and thus his conviction on both counts violated the protection against double jeopardy.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Louie has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a

habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."  28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952).  Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

## IV. DISCUSSION

A.    Instructional Error

1.    *Unanimity Instruction*

Louie first argues that the trial court should have given a unanimity instruction in connection with the witness intimidation charged in count 3.  As to that count, the amended information stated in relevant part: "On or about 01/06/2007 the crime of DISSUADING A WITNESS BY FORCE OR THREAT, in violation of Section 136.1(c)(1) of the Penal Code, a FELONY, was committed by SORIYAA EK, AND MICHAEL HONG LOUIE, who at the time and place last aforesaid, did willfully, knowingly, maliciously, and unlawfully prevent and dissuade CHRISTINA MCDONALD, and attempt to prevent and dissuade said victim, a victim and witness of a crime, by means of force and threats of unlawful injury to the person and damage to the property of himself/herself and another from: MAKING A REPORT OF VICTIMIZATION OR ASSISTING IN THE PROSECUTION OF DEFENDANT."

On direct appeal, Louie argued that the prosecution presented at trial several threats or acts of violence directed toward McDonald and that, because the information stated that the crime occurred "[o]n or about" a specific date, any of them could have formed the basis for the

offense in count 3.  Specifically, he pointed to the threats made the night of the fire, the threats

Danh and Pheng made when they threw a planter at Eric Lamarra and the subsequent visit

someone made telling them not to testify, the threats made with sticks at various times, and the

January 15, 2007, incident when Ek pointed a gun at McDonald.  Louie appears to argue that the

jury could construe any of these events, separately or collectively, as the means of committing

the witness intimidation offense charged and thus the jury should have been instructed that it

must unanimously agree on the acts underlying the witness intimidation conviction.

As an initial matter, the Constitution does not require unanimous agreement on the theory

underlying a conviction.  *See Richardson v. United States*, 526 U.S. 813, 817 (1999) (federal

jury need not unanimously decide which set of facts make up a particular element of a crime);

*Schad v. Arizona*, 501 U.S. 624, 631-32 (1991) (plurality holding that conviction under different

theories does not violate due process); *see also McKoy v. N. Carolina*, 494 U.S. 433, 449 (1990)

(Blackmun, J., concurring) ("[D]ifferent jurors may be persuaded by different pieces of

evidence, even when they agree upon the bottom line.  Plainly there is no general requirement

that the jury reach agreement on the preliminary factual issues which underlie the verdict."

(footnotes omitted)).

While a California trial court may be required under state law mandating that a jury

verdict in a criminal case be unanimous to *sua sponte* instruct the jury that it must unanimously

agree on the acts underlying the offense in order to convict, federal law is clear that, at least in a

non-capital case, there is no federal right to a unanimous jury verdict.  *Compare People v.

Diedrich*, 643 P.2d 971, 980-81 (Cal. 1982) and *People v. Crawford*, 182 Cal. Rptr. 536, 538

(Cal. Ct. App. 1982) (unanimity instruction required where defendant was charged with

8

possession of one or more firearms by felon and jury could disagree as to particular firearm),

*with Schad*, 501 U.S. at 634 n.5 ("a state criminal defendant, at least in noncapital cases, has no

federal right to a unanimous jury verdict") and *Apodaca v. Oregon*, 406 U.S. 404, 410-13 (1972)

(no constitutional right to unanimous jury verdict in non-capital criminal cases).

 Consequently, at least in non-capital criminal cases, courts within the Ninth Circuit have

routinely dismissed habeas claims arguing that a California "unanimity" jury instruction was

required. *See, e.g., Sullivan v. Borg*, 1 F.3d 926, 927-28 (9th Cir. 1993) (citing *Schad* to find that

instruction allowing California jury to convict defendant of first degree murder without

unanimity as to whether he had committed felony murder or premeditated murder did not violate

petitioner's due process rights); *O'Rourke v. O'Connor*, No. CIV S-09-1837, 2010 WL 4880667,

at *6 (E.D. Cal. Nov. 23, 2010).

 Because there is no federal law requiring a jury verdict to be unanimous, as with any

instructional error, Louie is entitled to habeas relief only if he can show that the trial court's

failure to give a unanimity instruction "so infected the entire trial that the resulting conviction

violates due process." *Estelle,* 502 U.S. at 72 (quoting *Cupp v. Naughten,* 414 U.S. 141, 147

(1973)).  Where the alleged error is failure to give an instruction, the burden on the petitioner is

"especially heavy." *Henderson v. Kibbe,* 431 U.S. 145, 155 (1977).

 Louie cannot satisfy this heavy burden because the record indicates that, contrary to

Louie's assertion, the prosecutor specifically chose the events that occurred on January 6, 2007,

as the basis of the witness intimidation charge and thus focused the jury's attention on these

specific acts as the sole basis of the elements underlying the charge.  As the Court of Appeal

found:

In this case the prosecution effectively selected the act to prove the offense when it alleged the act was committed on or about January 6, 2007.  Not only was the date contained within the information, but the jury was instructed that both [Louie and Ek] were "charged in Count 3 with intimidating a witness on January 6th, 2007."

Defendant Louie argues that because the prosecutor argued that the totality of the circumstances proved the elements of count 3, he effectively argued that the jury could choose any of several intimidations to qualify as the criminal act.  Not so.

The prosecutor argued that the jury could look to the totality of circumstances to prove that [Louie and Ek] knew they were trying to prevent or discourage McDonald from reporting her victimization, to prove that McDonald had been a witness or victim of a crime, and to prove that [Louie and Ek] acted maliciously.  However, in arguing the circumstances of the particular crime, it is clear the prosecutor was referring only to the incident occurring the night of the fire.

Thus, when explaining the basis for count 3, the prosecutor told the jury, "[y]ou've heard the testimony of Detective Slater in regards to the *prior incidents* and both Eric and Christina's outline of the incident which took place between October 6, 2006, and January of 06, 2007."  (Italics added.)  This indicated to the jury that the prosecutor considered count 3 to be the January 6, 2007, incident, not the incidents that occurred prior to this date.  The prosecutor further described the events constituting the crime when he stated that McDonald made an anonymous call to the police on the same day as the alleged witness intimidation, and "[l]ater that night is when these events happened."  The prosecutor also referred to the verbal threat [Louie and Ek] made to McDonald the night of the fire, telling her, "Fuck you, you're a cop caller, get inside, bitch, you're going to get yours."

Finally, after the prosecutor discussed the intimidation alleged in count 3, he stated, "[t]he next intimidation that we have, ladies and gentlemen, takes place on the 15th."  This clarifies that the later witness intimidation was not included in count 3.

Because the prosecution chose the January 6, 2007, incident as the basis of count 3, no unanimity instruction was necessary.

Accordingly, the information, the jury instructions, and the prosecutor's argument removed any possible doubt as to whether the jury considered only those acts occurring on January 6, 2007, as the basis for count 3.  Louie thus cannot show that he was deprived of a fair trial and is not entitled to relief on this claim.

2.    *Witness Intimidation Instruction*

Louis also appears to join in the argument Ek advanced on direct appeal challenging the witness intimidation instruction.  On direct appeal, Ek argued that the witness intimidation

instruction was defective because it allowed he and Louie to be convicted of dissuading a witness from reporting a crime that was not the same crime the victim either witnessed or suffered.

The jury was instructed in pertinent part: (1) "defendant maliciously tried to prevent or discourage . . . McDonald from reporting a victimization or causing the arrest of anyone in connection with a crime;" (2) "McDonald was a witness or crime victim;" and (3) "defendant knew he was trying to prevent or discourage Christina McDonald from reporting a victimization or causing the arrest of anyone in connection with a crime and intended to do so."  Ek argued that the instruction was erroneous because, in this case, it allowed a finding that Louie and Ek intimidated the victim to prevent her from reporting future crimes committed by the gang.

The Court of Appeal concluded that, to the extent the instruction indicated to the jury that Louie and Ek were guilty of the crime even if the jury found their intent was to dissuade McDonald from reporting some crime that she had not yet witnessed or suffered, the error was harmless.

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990).  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.  *Francis v. Franklin*, 471 U.S. 307, 309 (1985).  This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the

law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id*. at 73 (citation omitted).

Louie cannot satisfied this high standard. First, Louie does not allege in his Petition that the alleged instructional error deprived him of any federally protected right. Rather, Ek interpreted the witness intimidation statute as requiring an identity between the crime the victim suffered or witnessed and the crime the victim was dissuaded from reporting based on the wording in the statute that makes it a crime to prevent a person from making a report of "that victimization" and from causing an arrest in connection with "that victimization." *See* CAL. PENAL CODE § 136.1(b)(1), (3). But even if the instructions were contrary to the statute, such error raises only an issue of state law for which federal habeas relief is unavailable. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("Federal habeas corpus relief does not lie for errors of state law."). "Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in comparison to the CALJIC model." *Estelle*, 502 U.S. at 72.

Moreover, Louie cannot show that any instructional error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see Hedgpeth v. Pulido*, 555 U.S. 57, 62 (2008) (per curiam) (applying *Brecht* harmless error analysis to instructional error claim on federal habeas review).[3]  As the state appellate court explained:

> There is no reasonable likelihood that the jury would have believed that it was [Louie's and Ek's] intent to prevent McDonald from reporting or facilitating [their] arrest as to future uncommitted crimes, but not the very crime that was meant to intimidate her. The jury could not have believed that it was okay for [Louie and Ek] to dissuade McDonald from reporting or having them arrested for burning her apartment, but not okay for them to dissuade her from reporting future, as yet uncommitted crimes.  We will not reverse unless there is a reasonable likelihood the jury misconstrued or misapplied the jury instruction in a way that denied fundamental fairness. . . .  There was no such reasonable likelihood here, thus any error was harmless.

For these reasons, even assuming that the instruction is erroneous, it did not have a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 638, and the Court is without "grave doubt as to the harmlessness of [the] error," *Deck*, 768 F.3d at 1022 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995)).  Louie is therefore not entitled to relief on this instructional error claim either.

---

[3]      Where the *Brecht* standard of prejudice applies, federal courts apply *Brecht* "'without regard for the state court's harmlessness determination.'"  *Deck v. Jenkins*, 768 F.3d 1015, 1022 (9th Cir. 2014)(quoting *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010)). The *Deck* court explained that "AEDPA deference to the [state court's] harmlessness determination is already subsumed within the *Brecht* standard."  *Id.* at 1024 (citing *Fry v. Pliler*, 551 U.S. 112, 120 (2007))

B.      Sufficiency of the Evidence

1.      *Aiding and Abetting*

Louie also argues that the evidence presented by the prosecution failed to show that he knew of Ek's criminal intent or that he committed any act with the intent of aiding and abetting the witness intimidation.

As articulated by the Supreme Court in *Jackson*, the federal constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard).  This Court must therefore determine whether the California court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.  *Jackson*, 443 U.S. at 318-19.  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."  *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law.  *Jackson*, 443 U.S. at 324 n.16.  A fundamental principle of our federal system

is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Under California law, a defendant who did not directly engage in witness intimidation may nonetheless be guilty if he or she aided and abetted in its commission. *See* CAL. PENAL CODE § 31. "[A] person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator, and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." *People v. Beeman*, 674 P.2d 1318, 1322 (Cal. 1984) (quoting CALJIC No. 3.01); *accord People v. Gonzales*, 256 P.3d 543, 576 (Cal. 2011). "[I]n general neither presence at the scene of a crime nor knowledge of, but failure to prevent it, is sufficient to establish aiding and abetting its commission." *People v. Campbell*, 30 Cal. Rptr. 2d 525, 529 (Cal. 1994). "However, '[a]mong the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.'" *Id.* (citation omitted).

Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *Schlup*, 513 U.S. at 330.

15

The United States Supreme Court has recently even further limited a federal court's scope of review under *Jackson*, holding that "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam). *Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Id.* at 3-4. Under *Cavazos*, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* at 4 (*quoting Renico v. Lett*, 559 U.S. 766, 773 (2010)).

In this case, the Court of Appeal concluded on direct appeal:

> Here, there was more than enough evidence to convict Louie of the witness intimidation count. Louie was with Ek and they were talking before McDonald opened the door. He and Ek both glared at McDonald when she opened her door. The burning of the apartment was part of the effort to intimidate McDonald, who was known to regularly report criminal activity to the police. Louie was associated with the TRG gang responsible for the criminal activity in the neighborhood. Louie's clothing tested positive for gasoline, leading to the reasonable inference that he participated in the arson, thus participated in the effort to intimidate McDonald. Together these facts are sufficient to support the jury's determination that Louie had the intent to aid Ek in dissuading McDonald from reporting the arson.

Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Viewing the evidence in the light most favorable to the verdict, this Court concludes that there was sufficient evidence introduced at trial from which a rational trier of fact could have found beyond a reasonable doubt that Louie aided and abetted in the commission of witness intimidation, as that term is defined by California law. For the reasons enumerated by the Court

16

of Appeal, the record does not compel the conclusion that no rational trier of fact could have found proof that Louie aided and abetted Ek, especially considering the deference owed under *Jackson*, *Cavazos*, and the AEDPA.  The state court's rejection of Louie's legal sufficiency claim is therefore not "objectively unreasonable" under *Cavazos*.  132 S. Ct. at 4.  Accordingly, Louie is not entitled to habeas relief on his claim that the evidence introduced at trial was insufficient to support the jury's finding that he aided and abetted Ek in intimidating McDonald.

    2.    *Witness Intimidation*

    Louie likewise argues that there is insufficient evidence in the record that he and Ek had the specific intent to dissuade McDonald from making a report of a crime, as required for the witness intimidation conviction.  On direct appeal, Louie and Ek claimed that the only reasonable interpretation of the evidence is that they solely intended to retaliate against McDonald for reports she had already made.  They argued that the threat could not have been to dissuade McDonald from reporting or seeking arrests for the incident involving Danh and Pheng because she had already reported that incident, and Danh and Pheng had been arrested and prosecuted for it.  They also argued that other criminal acts McDonald had witnessed being committed by TRG members could not have been the basis for the threats because there was no evidence that Louie or Ek were involved in any of those incidents or that they knew McDonald had witnessed any of those crimes.

    The Court of Appeals disagreed:

        [T]he evidence supports the jury's finding that [Louie's and Ek's] purpose in targeting McDonald was to prevent her from reporting both general criminal activities committed by TRG in the neighborhood, and specifically the arson incident.
        The reason McDonald was targeted was made clear by Ek's own words when he called McDonald a "cop calling bitch."  [Louie and Ek] thus knew that McDonald had called authorities about criminal activities in the past.  McDonald testified she regularly

17

called the police about the gang activities in the neighborhood, although she did not always give her name.  The prosecution's gang expert testified to his opinion that one purpose of the threat and the arson was to demonstrate to the neighborhood (and presumably to McDonald as well) that the consequences of reporting gang activity to the police are dire.  He opined that one purpose of the arson was to send a message to the neighborhood not to "mess with" the gang.  Thus, there was sufficient evidence to support the jury's finding that the threat and the arson were for the specific purpose of preventing McDonald from calling the police to report gang activity she either witnessed or experienced as a victim.

A defendant may violate section 136.1 where the threat is made at the time of the crime itself.  Thus, in *People v. Hallock* (1989) 208 Cal. App. 3d 595, 607, the court found that where the defendant, before escaping, told the attempted rape victim, "'if you tell anybody anything that happened tonight here, . . . I'll blow your house up[,]'" the threat could reasonably have been believed to have been directed at reporting the crime to the police.  Likewise, here [Louie and Ek] called McDonald a cop caller and told her she would get hers shortly before they set her apartment on fire.  This is sufficient evidence for the jury to conclude [Louie's and Ek's] words combined with their actions were specifically intended to dissuade her from contacting the police about the fire.

Viewing this evidence in the light most favorable to the verdict, the Court likewise concludes that there was sufficient evidence introduced at trial, as described by the Court of Appeal, from which a rational trier of fact could have found beyond a reasonable doubt that Louie and Ek possessed the specific intent to prevent McDonald from reporting not only general criminal activities committed by TRG but specifically the arson incident.  The state court's rejection of Louie's legal sufficiency claim is therefore not "objectively unreasonable" under *Cavazos*.  132 S. Ct. at 4.  Louie is therefore not entitled to relief on this sufficiency of the evidence claim either.

C.      Double Jeopardy

Finally, Louie joins in the double jeopardy claim Ek raised on direct appeal.  Ek argued that the arson, witness intimidation, and criminal threat that the jury found occurred on January 6, 2007, comprised a course of conduct with the single objective of punishing McDonald for being a cop caller.  He therefore argued that the punishment for arson should have been stayed

pursuant to Penal Code § 654, which precludes multiple punishment for a single act or omission

or an indivisible course of conduct.  *See* CAL. PENAL CODE § 654.

The Court of Appeal rejected the claim for the following reasons:

There was sufficient evidence to support a finding by the trial court that [Louie and Ek] harbored multiple independent objectives when they threatened McDonald, then set her apartment on fire. . . .

Detective Slater testified that one of [Louie's and Ek's] criminal objectives was to make sure the entire neighborhood knew what would happen to anyone who reported the criminal activities of the gang.  The jury was instructed that to find [Louie and Ek] guilty of arson, it must find that [they] acted on purpose to burn the apartment.  The fact that the jury convicted [Louie and Ek] of arson indicates it found beyond a reasonable doubt that one of [their] purposes was to burn the apartment.  There was also sufficient evidence based on the verbal threat given to McDonald, that one of the criminal objectives was to prevent McDonald from reporting the crime to the authorities.  [Louie and Ek] themselves argue their purpose was to punish McDonald for reporting past crimes.

Moreover, where a course of conduct is divisible in time it may give rise to multiple punishment even if the acts are directive to one objective.  If the separation in time afforded [Louie and Ek] an opportunity to reflect and to renew their intent before committing the next crime, a new and separate crime is committed.  The evidence indicated that there was a pause of about 15 minutes between the verbal threat to McDonald and the fire.  McDonald did not mention seeing a bucket or smelling gasoline, thus, as Ek recognizes, the "only reasonable conclusion is that, after McDonald closed her door, [Ek] set about provisioning himself with a bucket filled with gasoline and then returned to McDonald's apartment to pour the gasoline on the door and window and ignite it."  This gave [Louie and Ek] the time to reconsider and reflect upon their actions, and to renew their intent before burning McDonald's apartment.

Because [Louie's and Ek's] course of conduct consisting of two criminal acts was incident to several objectives and was separated in time by an interval sufficient to allow them to reflect and renew their intent, the court properly sentenced [Louie and Ek] for the crimes of arson and dissuading a witness.

*Louie*, 136 Cal. Rptr. 3d at 653-54.

In his Petition, Louie contends that the court's alleged error in failing to stay the sentence

on the arson conviction also violated the protection against double jeopardy.[4]  But Louie fares no

---

[4]      Again, to the extent that Louie claims that the alleged failure to stay the arson conviction was contrary to state law, such claim is not cognizable on federal habeas review.  *See* *Lewis*, 497 U.S. at 780.

better when analyzing his claim as an alleged violation of the federal double jeopardy

protections.  The Double Jeopardy Clause of the Constitution provides that no person shall "be

subject for the same offen[s]e to be twice put in jeopardy of life or limb."  U.S. CONST. amend.

V.  The clause is enforced against the states through the Fourteenth Amendment. *Benton v.*

*Maryland*, 395 U.S. 784, 787 (1969).  The Supreme Court has previously held that this clause

protects against successive prosecutions for the same offense after acquittal or conviction and

against multiple criminal punishments for the same offense.  *Monge v. California*, 524 U.S. 721,

727-28 (1998) (citing *N. Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

      "[W]here the same act or transaction constitutes a violation of two distinct statutory

provisions, the test to be applied to determine whether there are two offenses or only one, is

whether each provision requires proof of a fact which the other does not . . . ." *Brown v. Ohio*,

432 U.S. 161, 166 (1977) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).  "If

each requires proof of a fact that the other does not, the *Blockburger* test is satisfied,

notwithstanding a substantial overlap in the proof offered to establish the crimes." *Id.* at 166

(quoting *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)).  In this case, Louie was

convicted under state law of separate, distinct criminal acts—arson and witness intimidation.

The offenses require under state law proof of distinct elements to support convictions.  Thus, the

convictions do not violate the "same elements" test of *Blockburger*, 284 U.S. at 304, and Louie

cannot prevail on his double jeopardy claim.

V. CONCLUSION AND ORDER

Louie is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a COA. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: January 27, 2015.

        /s/James K. Singleton, Jr.
        JAMES K. SINGLETON, JR.
        Senior United States District Judge